# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANDREA M. SMITH,

       Plaintiff,                            :           Case No. 3:10-cv-013

                                              District Judge Timothy S. Black
      -vs-                                       Magistrate Judge Michael R. Merz

                                              :

GE AVIATION,

       Defendant.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Motion to Dismiss of Defendants University of Cincinnati Institute for Psychiatry and Law, Scott Bresler, and Brian M. Masterson (the "UC Defendants")(Doc. No. 46). Plaintiff opposes the Motion (Doc. No. 50) and the UC Defendants have filed a Reply in support (Doc. No. 51).

A motion to dismiss is dispositive within the meaning of Fed. R. Civ. P. 72(b) and thus requires a report and recommendations under the Magistrates' Act, 28 U.S.C. § 636(b).

The Motion is made pursuant to Fed. R. Civ. P. 12(b)(6) whose purpose is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) was recently re-stated by the Supreme

1

Court:

> Factual allegations must be enough to raise a right to relief above the speculative level,  see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Bell Atlantic*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(emphasis in original).

*Bell Atlantic* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46, specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 550 U.S. at 555.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009). Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. ... Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice."  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-630 (6th Cir. 2009).

> [O]n the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp, of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. Id. (quoting *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank USA, NA*, 2010 U.S. Dist. LEXIS 102908 (S.D. Ohio Sept. 28, 2010).

Plaintiff's First Amended Complaint purports to state fourteen counts for recovery. Factual

allegations potentially involving the UC Defendants begin at ¶ 43 and state that Plaintiff was forced to undergo a fitness for duty psychological examination as the result of an anonymous blog post claiming she was suicidal. She asserts that the examination was forensic as opposed to clinical, unnecessarily invasive, and videotaped, (Doc. No. 39, PageID 175, ¶ 52), and that the examination itself caused her mental distress and psychological disability. *Id.* ¶ 55. As evidence that the examination was not a bona fide professional examination, Plaintiff claims that at its termination, Drs. Bresler and Masterson offered to negotiate a severance for her from Defendant General Electric. *Id.* ¶ 54. Finally, although they told her at the end of the evaluation that they did not believe she was a danger to herself or others, they included in their final report their opinion, which had not been in the draft report, that she was not fit for duty. *Id.* ¶¶ 57-60.

Based on these factual allegations, Plaintiff has sued the UC Defendants in Count I (gender discrimination and retaliation under Title VII), Count II (gender discrimination and retaliation in violation of Ohio Revised Code § 4112.02), Count IV (discrimination and retaliation in violation of the Americans with Disabilities Act, Count V (disability discrimination and retaliation in violation of Ohio Revised Code § 4112.02 and 4112.09), Count VI (civil conspiracy), Count XI (intentional and/or negligent infliction of emotional distress), Count XII (defamation), and Count XIII (public policy tort)[1].

---

[1] Despite the use of the collective "Defendants" in ¶ 126, Plaintiff has disclaimed any intention to sue the UC Defendants for the Equal Pay Act claim made in Count X.

**The UC Defendants Did Not Employ Plaintiff**

Title VII of the 1964 Civil Rights Act, Chapter 4112 of the Ohio Revised Code, and the Americans with Disabilities Act all impose liability on employers with respect to various discriminatory or retaliatory actions taken toward their employees. Nowhere in the First Amended Complaint does Plaintiff ever assert that she was an employee of any of the UC Defendants.

In her Response to the Motion, Plaintiff alleges she has pled sufficient facts to show, if the facts are proved, that the UC Defendants were agents of GE in the acts they carried out. She then argues that Title VII includes the acts of agents in order to include *respondeat superior* liability. (Response, Doc. No. 50, PageID 253, citing *Ella v. Long*, 59 F.3d 1391 (D.C. Cir. 1995). It is unclear why Plaintiff believes that supports her position. The fact that an employer is liable for the acts of its employees or agents does not make those employees or agents jointly liable as co-employers. Of course under Ohio law a supervisory employee or manager may also be liable. *Genaro v. Central Transport, Inc.*, 84 Ohio St. 3d 293, 703 N.E. 2d 782 (1999). However, Plaintiff has separately pled her Genaro claims in Count III against Defendants Jacobs and Brichacek and has not included the UC Defendants in that cause of action.

The UC Defendants note that in the First Amended Complaint Plaintiff pleads they were contractors rather than agents. The Court need not reach that question because none of the UC Defendants was an employer of Plaintiff. Nor need the Court reach the fact that none of the UC Defendants was included in the charge Plaintiff filed with the Ohio Civil Rights Commission which would be a prerequisite to suit under Title VII. These two matters are immaterial because none of the UC Defendants is alleged to have been Plaintiff's employer within the meaning of the law relied on in Counts I, II, IV, and V. Those four claims should be dismissed as to the UC Defendants. Because no conceivable amendment to the complaint could cure the deficiency, the dismissal should

be with prejudice.

### Count VI:  Civil Conspiracy

In Count VI, Plaintiff alleges the UC Defendants conspired with GE to violate her rights against discrimination.  Specifically, she alleges they "manipulated [their report] to reflect GE's desired result to allow GE to retaliate against plaintiff and to discriminate against her based upon her disability or perceived disability by precluding her from returning to work for an extended period of time." (First Amended Complaint, Doc. No. 39, PageID 183, ¶ 107.)

In Ohio, a civil conspiracy consists of :  (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.  *Universal Coach v. NYC Transit Authority,* 90 Ohio App. 3d 284, 629 N.E. 2d 28 (Cuyahoga Cty.,1993), citing *Minarik v. Nagy,* 8 Ohio App. 2d 194, 26 Ohio Op. 2d 359, 193 N.E. 2d 280 (1963).   The requirement of an independent unlawful act is confirmed in *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998)*,* citing *Gosden v. Louis,* 116 Ohio App. 3d 195, 219, 687 N.E. 2d 481, 496 (1996).  A civil conspiracy under Ohio law consists of a "malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co*., 72 Ohio St. 3d 415, 419, 650 N.E. 2d 863 (1995), quoting *LeFort v. Century 21-Maitland Realty Co*., 32 Ohio St. 3d 121, 512 N.E. 2d 640 (1987) citing *Minarik, supra*. *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998).

The UC Defendants argue that Plaintiff has not pled an independent unlawful act because the conspiracy claim depends upon the discrimination and retaliation claims which, they rightfully assert, are not properly pled against them (Motion, Doc. No. 46, PageID 219).  But they read the

6

First Amended Complaint too narrowly. There is no doubt that the complaint states claims against GE for discrimination and retaliation and the UC Defendants are alleged not just to have conspired among themselves, but to have conspired with GE. Thus the First Amended Complaint does allege one or more independent wrongful actions and that the UC Defendants conspired with GE to carry those out.

Now is the allegation of conspiracy a bare conclusory allegation which would run afoul of *Iqbal, supra*. Plaintiff has alleged supporting facts – the offer to negotiate a severance and the change in the final report to give an unfitness opinion – which are beyond mere conclusory allegations.

The Motion to Dismiss should be denied as to Count VI.

### Count XI: Intentional/Negligent Infliction of Emotional Distress

In Count XI, Plaintiff claims all Defendants, including the UC Defendants, should be held liable for intentionally and/or negligently inflicting emotional distress on her.

Like Count VI, the Court has jurisdiction over this claim under 28 U.S.C. § 1367. A federal court exercising supplemental or diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. §1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States). Thus Ohio law governs whether the First Amended Complaint states a claim for relief.

The First Amended Complaint plainly does not state a claim for relief for negligent infliction of emotional distress.

7

> To state a claim for negligent infliction of emotional distress under Ohio law, the plaintiff must allege that he was aware of real physical danger to himself or another. See *King v. Bogner*, 88 Ohio App. 3d 564, 624 N.E.2d 364, 367 (Ohio Ct. App. 1993); see also *Heiner v. Moretuzzo,* 73 Ohio St. 3d 80, 1995 Ohio 65, 652 N.E.2d 664, 669 (Ohio 1995) (Ohio courts have limited "recovery for negligent infliction of emotional distress to instances where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril").

*Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008).

In recognizing the tort of intentional infliction of emotional distress in Ohio, the Ohio Supreme Court adopted Restatement of the Law 2d, Torts 2d, §46, and comment d to that section which reads:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033, 1053 (1936).

*Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 453 N.E. 2d 666 (1983), *abrogated by, Welling v. Weinfeld,* 113 Ohio St. 3d 464 (2007) [although *Yeager* has been abrogated by *Welling*, the proposition for which the Court cites *Yeager* herein was not disturbed by *Welling*].

In order to recover on an action for the intentional infliction of serious emotional distress four

elements must be proved: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and 4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person can be expected to endure it. *Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995); *Pyle v. Pyle,* 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (Cuyahoga Cty. 1983) (citation omitted); *Bellios v. Victor Balata Belting Co*., 724 F. Supp. 514, 520 (S.D. Ohio 1989).

All that Plaintiff has alleged against the UC Defendants by way of facts on this claim is that they subjected her to a "forensic" mental status examination which was overly broad and unnecessarily intrusive, instead of a "clinical" mental status examination. While that may or may not have been appropriate under the circumstances, it does not rise to the level of "outrageous" conduct required to support this tort under Ohio law. Count XI should be dismissed for failure to state a claim upon which relief can be granted. The dismissal should be without prejudice to allow Plaintiff to amend if she has additional facts to assert which would reach the level of outrageous conduct.

## Count XII: Defamation

Count XII purports to state a claim for relief against all Defendants for defamation. The claim is very conclusory – it merely alleges that unspecified Defendants have made unspecified false statements concerning Plaintiff to unspecified third parties. In ¶ 131, the first paragraph of this Count, the Plaintiff follows the common practice of incorporating by reference all the prior 130

paragraphs, but nowhere in those paragraphs has she alleged which UC Defendant made which false statement concerning her.

In her Response Plaintiff adverts to ¶¶ 107 and 108 of the First Amended Complaint.  The only statement referenced in those paragraphs is the UC Defendants' statement to Ge that Plaintiff was unfit for duty.  Also in her Response, Plaintiff alleges that this statement was false because the UC Defendants had told her verbally at the end of the examination that she was fit for duty (Response, Doc. No. 50, PageID 265).  That is not, however, what is in the First Amended Complaint.  In ¶ 53 she pleads that she was told by Defendants Bresler and Masterson at the end of the evaluation that she "was not a danger to herself or anyone else."  That is the legal test for involuntary commitment, not for fitness for duty for any kind of employment.  It does not follow logically that anyone who is not a danger to herself or others is, ipso facto, qualified to perform her job, so the two statements are not logically inconsistent.

The UC Defendants claim that their statement that Plaintiff was unfit for duty is an opinion, not a statement of fact (Motion, Doc. No. 46, PageID 224.)  Plaintiff responds that it is a "false conclusion not based on medical opinions" and "[t]he UC Defendants failed to identify any ways in which Ms. Smith was unable to perform the essential duties of her job ..." (Response, Doc. No. 50, PageID 266).

Under Ohio law, the elements of a defamation claim, whether libel or slander, are "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008), quoting *Akron-Canton Waste Oil v. Safety-Kleen Oil Servs.*, 611 N.E.2d 955, 962 (Ohio App. 9th Dist. 1992) (internal quotation marks omitted).

Plaintiff cites no authority in support of her position that the UC Defendants' statement can be construed as a statement of fact rather than opinion. The authority cited by the UC Defendants on this question is inconclusive. The Court will therefore assume for purposes of argument that the statement could be construed legally as a statement of fact.

Construing the First Amended Complaint most favorably to Plaintiff, it is still barred by the one-year statute of limitations applicable to defamation actions in Ohio. Ohio Revised Code § 2305.11. The statement in question was made to GE on April 14, 2009, and Plaintiff did not seek leave to add this claim to her case until September 20, 2010.

Count XII should be dismissed with prejudice as barred by the statute of limitations.

### Count XIII: Public Policy Tort

In Count XIII, Plaintiff alleges that the public policy of Ohio "prohibits employers from discriminating against and harassing employees on the basis of gender, disability or perceived disability or for 'whistleblowing' or similar reporting activities." (First Amended Complaint, Doc. No. 39, ¶ 136.)

As the UC Defendants point out, the public policy tort in Ohio is an exception to the employment-at-will doctrine only. In her Response Plaintiff points to no case where Ohio courts have permitted such a cause of action except against an employer and, as noted above, none of the UC Defendants every employed Plaintiff. Count XIII should therefore be dismissed with prejudice.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Motion to Dismiss the First Amended Complaint as to the UC Defendants be granted as to Counts I, II, IV, V, XI, XII, and XIII, but denied as to Count VI.  The dismissal of Count XI should be without prejudice to a sufficient amendment.

April 4, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).