**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

ANDREA M. SMITH,

       Plaintiff,                  :         Case No. 3:10-cv-013

                                       District Judge Timothy S. Black
      -vs-                                 Magistrate Judge Michael R. Merz

                                  :

GE AVIATION,

       Defendant.

---

**REPORT AND RECOMMENDATIONS**

---

This case is before the Court on Motion to Dismiss the Second Amended Complaint (Doc No. 66) of Defendants University of Cincinnati Institute for Psychiatry and Law, Scott Bresler, and Brian M. Masterson (the "UC Defendants")(Doc. No. 71). Plaintiff opposes the Motion (Doc. No. 73) and the UC Defendants have filed a Reply in support (Doc. No. 75).

A motion to dismiss is dispositive within the meaning of Fed. R. Civ. P. 72(b) and thus requires a report and recommendations under the Magistrates' Act, 28 U.S.C. § 636(b).

The Motion is made pursuant to Fed. R. Civ. P. 12(b)(6) whose purpose is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) was recently re-stated by the Supreme

1

Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Bell Atlantic*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(emphasis in original).

*Bell Atlantic* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46, specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 550 U.S. at 555.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009). Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. ... Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice."  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-630 (6th Cir. 2009).

> [O]n the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp, of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. Id. (quoting *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank USA, NA*, 2010 U.S. Dist. LEXIS 102908 (S.D. Ohio Sept. 28, 2010).

Plaintiff's Second  Amended Complaint purports to state fifteen counts for recovery, to wit,

the claims contained in the First Amended Complaint plus a new Count XV for civil aiding and abetting (Doc. No. 66, ¶¶ 156-162). The Second Amended Complaint was filed before Judge Black ruled on the Reports and Recommendations then pending with respect to the UC Defendants' Motion to Dismiss the First Amended Complaint. He has now done so (Decision and Entry, Doc. No. 76), with the effect of holding that Counts I, II, IV, V, XII, and XIII as pled in the First Amended Complaint do not state a claim against the UC Defendants upon which relief can be granted. Plaintiff filed no objections to the recommendation that those six counts be dismissed for failure to state a claim, amounting to a waiver of any objection. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). She cannot overcome that waiver by filing another amended complaint and, in any event, Judge Black's decision on those six counts has now become the law of the case.

Likewise, Judge Black's denial of the UC Defendants' Motion to Dismiss as to the conspiracy count (Count VI) has also become the law of the case and no further analysis will be offered as to this claim.

Count XI was recommended to be dismissed without prejudice, but that recommendation was render moot by the filing of the Second Amended Complaint. Count XV was added by the Second Amended Complaint. It remains to analyze these two counts on the present Motion to Dismiss.

## Intentional Infliction of Emotional Distress

As noted in the first Report and Recommendations, the Court has jurisdiction over Plaintiff's claim for intentional infliction of emotional distress under 28 U.S.C. § 1367 and must therefore apply Ohio substantive law in determining whether the Second Amended Complaint states a claim upon which relief can be granted. 28 U.S.C. § 1652; *Gasperini v. Center for Humanities, Inc.*, 528

U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938).  Under Ohio law, four elements must be proved to recover for intentional infliction of emotional distress:  1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and 4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person can be expected to endure it. *Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995); *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (Cuyahoga Cty. 1983) (citation omitted); *Bellios v. Victor Balata Belting Co.*, 724 F. Supp. 514, 520 (S.D. Ohio 1989).

The Magistrate Judge recommended this claim be dismissed as pled in the First Amended Complaint because the only factual allegation was that the UC Defendants had conducted a forensic rather than a clinical fitness for duty examination of the Plaintiff (Report and Recommendations, Doc. No. 55, PageID 315.)  In the Second Amended Complaint, Plaintiff expands those allegations as follows:

> ¶ 139. Defendants University of Cincinnati Institute of Psychiatry and Law, Bresler and Masterson outrageously and knowingly used and perverted the proper and professional processes of psychiatric evaluation to intimidate and inflict emotional injury on plaintiff individually and as agents of GE by interrogating plaintiff for hours in a combined or "tag team" method to further exhaust her and increase her psychological symptoms; by inquiring into plaintiff's sexual relationships which were unrelated to her fitness and ability to perform the essential functions of her job; by using the facade of the purported "fitness for duty" examination which never discussed the essential functions of her job to undertake improper discovery on behalf of GE while plaintiff was under duress due to the mental and emotional battering of the "evaluation" and further by attempting to induce plaintiff into quitting, resigning or accepting a severance they attempted to negotiate with her, not at her request, or by attempting to induce plaintiff into making statements on videotape that these defendants knew GE could and would use to terminate her employment.

5

(Second Amended Complaint, Doc. No. 66, PageID 452-453.)

The UC Defendants argue this pleading is insufficient for three reasons. First, they assert that this claim essentially "sounds in" medical malpractice and is therefore barred by the applicable one-year statute of limitations in Ohio Revised Code § 2305.113(A). Second, they assert a person may not be held liable for intentional infliction of emotional distress for performing an act which that person was legally entitled to perform. Third, they note that the Magistrate Judge already held that even an overly broad and unnecessarily intrusive mental status evaluation does not rise to the level of intentional infliction of emotional distress necessary to support a claim for relief under Ohio law.

## Statute of Limitations

The UC Defendants assert that Plaintiff's claim for intentional infliction of emotional distress is in reality a claim for professional malpractice. They cite *Doe v. First United Methodist Church,* 68 Ohio St.3d 531, 536, 529 N.E.2d 402 ( 1994); *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E. 2d 166 (1988); and *Callaway v. Nu-Cor Auto. Corp.*, 166 Ohio App.3d 56, 62, 849 N.E.2d 62 (Ohio App. 10th Dist. 2006). (Motion to Dismiss, Doc. No. 71, PageID 523.) In *Doe* the Ohio Supreme Court held the tort of offensive sexual contact with a minor was essentially a battery and the one-year statute of limitations for battery could not be avoided by pleading the case as one of negligence or intentional infliction of emotional distress. In *Love* the same court held that a claim of improper arrest and handcuffing could not be pled in negligence so as to avoid the same one-year statute of limitations for battery. *Callaway* is inapposite. None of these cases involve attempting to re-characterize medical malpractice as intentional infliction of emotional distress. *Oliver v. Kaiser Cmty. Health Found.*, 5 Ohio St. 3d 111 (1983), established the discovery rule for medical malpractice cases and is not concerned with intentional infliction of emotional distress.

None of the cases cited by the UC Defendants stand for the proposition that a non-patient such as Plaintiff can bring a claim for medical malpractice against an examining physician or psychologist. That is, none of the cited cases establish that a person in Ms. Smith's situation (involuntary psychological examinee) could have brought such a case. The UC Defendants have not, therefore, established that this action is barred by the statute of limitations for medical malpractice.

### Legal Entitlement to Perform

The UC Defendants assert they are not liable for any emotional distress because they were legally entitled to perform the fitness for duty examination.

In *Vinson v. Grant/Riverside Methodist Hosps.*, 2001 U.S. Dist. LEXIS 26372 (S.D. Ohio 2001), Judge Sargus upheld the authority of an employer to require a fitness for duty examination against a claim of disability discrimination. He relied on *Sullivan v. River Valley School Dist.,* 197 F.3d 804 (6th Cir. 1999), which is to the same effect. Thus it appears that GE's insistence on a fitness for duty examination is not actionable per se. However, neither case discusses the manner in which the fitness for duty examinations in those cases was conducted.

In *Uebelacker v. Cincom Systems, Inc.,* 48 Ohio App. 3d 268, 549 N.E. 2d 1210 (Ohio App. 1st Dist. 1988), relied on by the UC Defendants, the employer claimed its conduct in discharging an at-will employee was privileged because it was legally entitled to discharge him. The court held

> Conduct that might otherwise be extreme and outrageous, and thus actionable upon a claim for intentional infliction of emotional distress, is privileged when "the actor * * * has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.   * * *"

*Id.* at 277, quoting 1 Restatement of the Law 2d, Torts (1965) 76, Section 46, Comment g. The court

7

went on, however, to insist that the privilege must be exercised in a reasonable manner:

> An actor's insistence on his legal rights must be done "in a permissible way," Restatement, supra, at 76, Section 46, Comment g, and the "extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* at 74, Section 46, Comment e; see, also, Foster, supra. Thus, we find that, even if the defendants' conduct in discharging Uebelacker was privileged, issues of fact remain as to whether the conduct preceding and surrounding his discharge was extreme and outrageous or constituted conduct in excess of privilege.

*Id.* Of course there are many cases upholding the privilege of law enforcement officers to use force in effecting an arrest while at the same time finding them liable for using excessive force when doing so, both so as to defeat the common law privilege against suit for battery and the statutory privilege under 42 U.S.C. § 1983 for qualified immunity. The published authority cited by the UC Defendants does not recognize a privilege conduct of a fitness for duty examination which disregards the manner in which the examination is conducted.

### Failure to State A Claim

The gravamen of Plaintiff's intentional infliction of emotional distress claim, as the Magistrate Judge reads it, is that the fitness for duty examination was conducted in an outrageous manner.

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Jackson v. NaphCare, Inc.,* 2011 U.S. Dist. LEXIS 94817 *3 (S.D. Ohio Aug. 24, 2011)(Black, J.)  It is insufficient to make a formulaic recitation of the elements of a cause of action. *Id. citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  As a first step, the Court must identify any conclusory allegations. *Id.* citing *Ashcroft v. Iqbal*,     U.S.    , 129 S.Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). The second step is to

determine whether the complaint states "a claim to relief which is plausible on its face." *Id.* citing *Iqbal*, 129 S. Ct. at 1949.

There is a great deal of highly colored conclusory language in this portion of the Second Amended Complaint and in Plaintiff's Memorandum in Opposition to the Motion to Dismiss. The UC Defendants are accused of "pervert[ing] the proper and professional processes of psychiatric evaluation," of conducting an "unnecessarily intrusive" examination, of "tag-team interrogation," indeed, of "emotional rape" of the Plaintiff. All of this conclusory language, along with the pleader's characterization of the behavior as "outrageous" is to be disregarded at this stage of the analysis.

Also to be disregarded at Plaintiff's allegations that the examination was unnecessarily broad in scope and violated professional standards among psychologists and psychiatrists for conducting such evaluations. Such standards may well be contested and will be, perhaps, a matter for expert testimony at the time of summary judgment or trial. But in itself exceeding the scope of agreed propriety in such examinations is not actionable.

When the conclusory language is stripped away, however, the Court is left with a plausible claim. While GE was legally entitled to order the examination and the UC Defendants have the proper credentials for conducting it, it may be that the manner of conducting the examination exceeded the bounds of conduct "tolerable in a civilized society." Certainly Plaintiff alleges facts well beyond the bare bones of a claim for intentional infliction of emotional distress. She sets forth the length, conduct, and manner of the examination. She alleges that it failed to inquire about her actual job duties and instead went into areas which, prima facie at least, appear to be unrelated to such an examination, such as attempting to negotiate her resignation. It is certainly conceivable that a psychiatric/psychological examination could be conducted in an outrageous manner and Plaintiff has done more than out the label "outrageous" on an otherwise unexceptionable procedure.

In *Twombly*, the Supreme Court emphasized the functional use of the 12(b)(6) motion to avoid unnecessary expense of time and money, mostly in discovery. In part the Magistrate Judge is persuaded to recommend allowing this claim to proceed because it will not impose any greater burden on the UC Defendants than proceeding with discovery on the conspiracy claim will impose. All those who participated in the examination will need to be deposed in any event and much of the factual matter Plaintiff relies on to support this intentional infliction of emotional distress claim will also be discoverable as to the conspiracy claim.

In adopting the Restatement version of this tort, the Ohio Supreme Court characterized the actionable conduct: "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 453 N.E. 2d 666 (1983).[1]  One can easily imagine cases in which a plaintiff would recite the plaintiff's perspective on the facts of the case and elicit the exclamation "outrageous" whereas no such reaction would be evoked by a recitation from the defendant's perspective. In this case the Court will have the advantage of being able to see the conduct of the examination because we are advised it was videorecorded. If the videorecording shows the manner of the conduct of the examination to be as outrageous as Plaintiff insists, then the propriety of submitting the matter to a jury will be evident. If, on the other hand, no reasonable juror would exclaim "outrageous," there is ample authority for the Court's granting summary judgment. *See Miller v. Currie, supra.*

It is therefore respectfully recommended that the UC Defendants' Motion to Dismiss the intentional infliction of emotional distress  claim be denied.

---

[1] *Abrogated as to other matters by Welling v. Weinfeld,* 113 Ohio St. 3d 464 (2007).

**Civil Aiding and Abetting**

The Second Amended Complaint adds Count XV, asserting liability against the UC Defendants for civil aiding and abetting.

The UC Defendants do not dispute that Ohio recognizes a tort for aiding and abetting and they do not claim that Plaintiff has failed adequately to plead the elements of that tort. Instead, they rely on the intracorporate immunity defense which they also raised as to Plaintiff's civil conspiracy claim. As noted above, it is the law of this case that the intracorporate immunity defense is not available to the UC Defendants on the conspiracy claim. The UC Defendants' argument on intracorporate immunity in the Motion *sub judice* relies on the same law relied on for the conspiracy claim and the defense is unavailing on the same analysis.

It is therefore respectfully recommended that the Motion to Dismiss be denied as to the aiding and abetting claim for relief.

August 31, 2011.

s/ **Michael R. Merz**<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure

may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).